| | | |
|---|---|---|
| United States District Court | Southern District of Texas | |

United States District Court
Southern District of Texas
**ENTERED**
March 21, 2022
Nathan Ochsner, Clerk

| | | |
|---|---|---|
| Jace Langley, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | Civil Action H-20-360 |
| | § | |
| Montgomery County, *et al.*, | § | |
| | § | |
| Defendants. | § | |

# Opinion on Summary Judgment

1. *Background.*

On November 18, 2018, Jace Langley had been drinking at two different bars. After getting into an altercation at the second, he got into his car and drove away. He went into the parking lot of a nearby store where he high-centered his car causing his air bags to deploy. Langley walked away from the lot.

After walking for an unknown amount of time, his girlfriend picked him up. Deputy Stanley Jolly stopped the car with Deputy Richard Rulong arriving as backup. Langley exited the car on the officers' request. While talking with the officers, Langley was being hostile toward them. Upon noticing that Langley smelled of alcohol, Rulong decided to arrest him for public intoxication.

The car was parked on the edge of the road next to a steep, grassy ditch. The grass was slick as it had been raining that day.

The evidence conflicts on whether handcuffs had been secured on Langley and exactly how it occurred, but, during the arrest, Langley and Rulong fell down into the ditch. Rulong landed on Langley with Rulong's knee hitting Langley's neck. Langley says that he mentioned his neck hurting, and Rulong shifted himself on to his shoulder blades.

The officers handcuffed Langley, escorted him out of the ditch, and put him in the back of Rulong's car. During the drive to the jail, Langley complained generally of neck pain.

Before being booked, a jail medic gave him an initial screening, and Langley gave no indication that he was severely injured. Upon completion, he refused to get dressed, so the officers put him in a smock. Overnight, Langley began complaining of neck and back pains. The jail's nurse attempted to check on him multiple times, but Langley was uncooperative.

Langley was booked the next morning where he was able to walk, talk, and function. When Langley began to dress in his street clothes, he began complaining of paralysis. The jailers summoned a medic, got him a wheelchair, and called an ambulance.

On January 31, 2020, Langley sued (a) Rulong for: (1) excessive force, (2) "summary punishment in violation of [the] Fourteenth Amendment," (3) failure to give medical aid, and (4) cruel and unusual punishment; and (b) Montgomery County and (c) Montgomery County Sheriff's Office for: (1) municipal liability for excessive force and cruel and unusual punishment, (2) failure to give medical aid, (3) failure to train, (4) failure to supervise, and (5) violating the Texas Tort Claims Act. The defendants have moved for summary judgment. They will prevail.

2. *Extraneous Potential Claims.*

Within his statement of facts in the complaint – and briefly repeated in his responses to the motions for summary judgment – Langley conclusorily says that the car was stopped without reasonable suspicion. He does not include these accusations as claims in his causes of action. This sloppy form of shotgun pleading contradicts the requirements in federal rule 10. Other than his half-hearted statements in the facts, Langley does not respond to the defendants' arguments against these claims and has effectively waived them.[1] These claims – to the extent that they exist – fail.

---

[1] *See Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002).

3.  *Langley's Factual Assertions.*

In his statements of facts in his responses to the motions, Langley asserts a multitude of facts that are either completely false, are unsupported by the record cited, or no support was given. It would be wasteful for this court to recreate the extensive list of these unsupported facts, but Rulong has done a succinct job of doing so in his reply (60). The court will only consider *evidence* in the record for summary judgment, not baseless and speculative allegations.

Another problem that permeates in this case is Langley's rendition of the incident. In his deposition, he frequently testified to having no memory of the large majority of the incident because he was highly intoxicated. It is not a genuine fact or a credibility concern if Langley legitimately has no recollection. He cannot testify to facts and either retract once proven wrong or not actually have knowledge. The court will consider these motions in a light favorable to Langley, but it will only consider evidence that has competent and admissible support.

4.  *Montgomery County Sheriff's Office.*

The Montgomery County Sheriff's Office is not a jurisdictional entity that is capable of being sued, and the claims against it fail.[2]

5.  *Deputy Richard Rulong.*

    A.  *Qualified Immunity.*

To defeat qualified immunity, Langley must show that: (a) the law was clearly established at the time; and (b) all reasonable officers in Rulong's position would have known that his conduct was unreasonable.[3] To be clearly established, the law must "have a sufficiently clear foundation in then-existing precedent" and be "dictated by controlling authority or a robust consensus of

---

[2] *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991).

[3] *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004).

cases of persuasive authority."[4] The court must consider this "in light of the specific context of the case, not as a broad general proposition."[5]

Langley says that the law was clearly established at the time that "an officer's continued use of force on a restrained and subdued suspect is objectively unreasonable."

The summary judgment evidence shows that Langley was: (1) resisting when he pulled away and had squared up to potentially fight; (2) at most, he was partially handcuffed; and (3) Rulong had a knee on his neck and back for a brief period.

Langley relies on five Court of Appeals cases to say that the law was clearly established:

(1) The force in *Timpa v. Dillard*, 20 F.4th 1020 (5th Cir. 2021), was held to be excessive because the arrestee was already restrained by being hogtied, and the officer had his knee on his back for over 14 minutes. Other than this case being decided after the indicent in this case, the force was for a significantly longer time, and Langley was not fully restrained. This case is distinguishable.

(2) In *Darden v. City of Fort Worth*, 880 F.3d 722 (5th Cir. 2018), the arrestee was not resisting, complied with all commands, and was then tased, punched, kicked, and slammed to the ground. This case is factually different.

(3) In *Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016), the officer ordered a k-9 unit to attack the arrestee for an elongated period of time after he had stopped resisting and was restrained. This case is again factually different.

---

[4] *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018).

[5] *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

 (4) In *Carroll v. Ellington*, 800 F.3d 154 (5th Cir. 2015), multiple officers hit, kicked, dragged by the neck, punched, sat on, and tased the arrestee 35 times after he was already restrained by multiple officers and handcuffs. This is distinguishable from this case.

 (5) *Bush v. Strain*, 53 F.3d 492 (5th Cir. 2008), involved a restrained and fully subdued arrestee, and its high level of generality was called into question by *Craig v. Martin*, 880 F.3d 722 (5th Cir. 2018).

Because Langley cannot give a Supreme Court or consensus of other cases to show that the law in this context was clearly established, Rulong will be protected by qualified immunity.

 B. *Excessive Force.*

Even if Langley could defeat qualified immunity, his excessive force claim would still fail.

To succeed on his excessive force claim under the Fourth Amendment, Langley must show that he "suffer[ed] an injury that result[ed] directly and only from a clearly excessive and objectively unreasonable use of force."[6] Reasonableness is determined by considering: (a) the crime's severity; (b) whether Langley posed an immediate threat; (c) whether he was actively resisting; (d) the relationship between the need for force and amount used; (e) the type of resistance; and (f) the appropriateness of the force used compared to the resistance.[7] This analysis must account for the fact that officers must make

---

[6] *Joseph v. Bartlett*, 981 F.3d 319, 322 (5th Cir. 2020).

[7] *Id.* at 332-33.

quick judgments in tense situations and not judge with hindsight.[8] It requires a use of force with intent to restrain – not just accidental force.[9]

Langley says that the force used was unreasonable because: (a) he was only arrested for a class C misdemeanor; and (b) he had tumbled down a ditch so he was not a risk.

The crime may have been minor, but Langley admits to pulling away and squaring up to fight. He also admits that the fall down the slick ditch could have been an accident. Rulong's knee may have been on his neck at some point, but Langley testified to Rulong shifting to his back as soon as he made it apparent it was on his neck.

Because Langley gives no competent summary judgment evidence that Rulong's use of force was excessive, his excessive force claim fails.

C. *"Summary Punishment."*

This claim is effectively an excessive force claim under the Fourteenth Amendment. "[A]ll claims [of] excessive force ... in the course of arrest, investigatory stop, or other seizure ... should be analyzed under the Fourth Amendment, [not] under a substantive due process approach.[10] Because the Fourth Amendment is the proper source, Langley's "summary punishment" claims fails for the same reasons as his excessive force claim.

D. *Failure to Give Medical Aid.*

After seizure and detention, Langley's right to medical attention is under the Fourteenth Amendment not the Fourth Amendment.[11] To prove his failure

---

[8] *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

[9] *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021).

[10] *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 278 (5th Cir. 2015).

[11] *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472-73 (5th Cir. 1996).

to give medical aid claim, Langley must show that Rulong: (1) was aware of facts from which the inference of a substantial risk of harm could be drawn; (2) drew that inference; (3) disregarded it by not taking reasonable measures; and (4) it caused Langley substantial harm.[12]

Langley says that he had complained of his neck hurting. He insists that Rulong knew he had been in a "car wreck," and that County policy required Rulong to take him to the hospital before jail. Langley also argues that Rulong disregarded his injury: (1) when he put him in the patrol car without a seatbelt – as required by County policy; (2) when he "stop[ed] to speak with his sergeant and does not mention that Mr. Langley was in a motor vehicle accident;" and (3) when he did not tell jail staff about the "full circumstances" of the arrest. He argues that this exacerbated his injuries.

Langley argues that "the right to be taken to the hospital pursuant to an ostensible policy " is clearly established. The two cases that he refers to in support either stand for the opposite conclusion or are completely factually distinguishable. This is inadequate to defeat qualified immunity.

Regardless, Langley does not give competent evidence to support this claim. Langley only complained of general neck and back pain before being at the jail – nothing that would be considered a substantial harm. The law does not require Rulong to be a trained medical professional or clairvoyant. Langley could walk, talk, and function under his own power. It was reasonable for Rulong to rely on the jail medical staff's advice after Langley informed her of his pains.[13]

Departmental regulations and local ordinances also cannot form the basis for liability under section 1983.[14] Langley, regardless, grossly over-exaggerates what happened with his car in the parking lot, and it is not clear that the motor vehicle accident policy was even violated.

Langley's denial of medical care claim fails.

---

[12] *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016).

[13] *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 527 (5th Cir. 1999).

[14] *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009).

E.  *Cruel and Unusual Punishment.*

The Eighth Amendment does not apply pre-conviction.[15] Langley's cruel and unusual punishment claim fails as a matter of law.

F.  *State Law Claims.*

Langley's *loosely* pleaded assault claim – which he also failed to defend in his response to the motion for summary judgment – is barred by the Texas Tort Claims Act's election of remedies provision and fails.[16]

6.  *Montgomery County.*

A.  *Municipal Liability – Excessive Force.*

To prove his municipal liability claim under section 1983, Langley must show that: (1) a constitutional violation occurred; (2) a policy attributable to the County's policymaker; and (3) the policy was the moving force behind the violation.[17]

Langley says that the County – through its policymaker, Sheriff Rand Henderson – has a "policy of using excessive force" because "the reactions of the other ... officers ... was that of a common occurrence" and that using excessive force is "standard procedure ... [b]y tactitly approving" it. He insists that this conduct "is so widespread and known by Montgomery County that since 2013 eight officers have lost their Texas Commission of Law Enforcement Peace Officer Licenses." Langley gives no examples with facts or context to show how any of these are similar.

Langley offers no evidence to support this theory. Vague speculation and legal conclusions are inadequate. His municipal liability for excessive force claim fails.

---

[15] *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

[16] Texas Civ. Rem. & Prac. Code § 101.106.

[17] *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622-23 (5th Cir. 2018).

B.  *Failure to Give Medical Aid.*

For his failure to give medical aid claim, Langley must give either a "condition of confinement" or "episodic act or omission" theory.[18] Langley did not specify which theory he was suing for, but in his response brief, he admits that he is only pursuing under the "episodic act or omission" theory.

To prove an "episodic act or omission" claim, Langley must show that: (1) a County employee violated his rights with subjective deliberate indifference; and (2) the violation was caused by a County policy or custom adopted with objective deliberate indifference.[19] It is inadequate to show unsuccessful treatment, negligence, or disagreeing with the treatment.[20] Langley must show that staff ignored his complaints, intentionally treated him incorrectly, or acted with wanton disregard for his serious medical needs.[21] The County is deliberately indifferent if it has, or fails to have, a policy or custom despite "the known or obvious consequences that constitutional violations would result."[22] Langley says that the County has a "*de facto* policy of denying medical care, as a widespread practice." He insists that this exacerbated his injuries because the sign instructing officers to bring people in car accidents to the hospital was "not enforced pursuant to this widespread practice nor were the written policies enforced or practiced." Langley argues that the jail staff did not properly check on him nor report his complaints to supervisors.

---

[18] *Shepard v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009).

[19] *Anderson v. Dallas County*, 286 Fed. App'x 850, 860 (5th Cir. 2008).

[20] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

[21] *Baughman v. Hickman*, 935 F.3d 302, 309 (5th Cir. 2019).

[22] *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

Legal conclusions and unsupported assertions do not create genuine disputes of fact to defeat summary judgment. The objective evidence shows that the jail made multiple attempts to give him medical attention. It was Langley's unwillingness to be treated or give more that a generalized complaint about his pain that led to his lack of care. As soon as Langley manifested serious symptoms, jail staff provided prompt care.

Langley offers no evidence of deliberate indifference or an actual jail policy that caused his injuries. He does not say what care he should have otherwise been given in the situation.

Langley's denial of medical care claim fails.

C.   *Failure to Train and Supervise.*

To prove his failure to train and supervise claims, Langley must show that: (1) the County's training and supervision was inadequate; (2) it was deliberately indifferent with its training policy and supervision; and (3) the inadequacy directly caused the violation.[23] Deliberate indifference generally requires a pattern of similar incidents where citizens were injured.[24]

Langley says that the County "has a history of improperly training its peace officers and allowing their misconduct to affect the citizens of Montgomery County" by not training on:

(1)   "proper escalation of force;"
(2)   "the use of excessive force;"
(3)   "the illegality of excessive force;"
(4)   "the constitutional limits of the use of force;"

---

[23] *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010); *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009).

[24] *Snyder v. Trepaginer*, 142 F.3d 791, 798-99 (5th Cir. 1998).

(5) "the necessity and proper limits of force in a custodial setting;" and

(6) "how to care and provide medical attention to inmates who are injured or have complained of injuries."

He also argues that the County "failed to properly supervise its officers" by not punishing them because only Rulong was fired after an internal affairs investigation while no one else was disciplined.

Langley again gives no relevant evidence but only offers legal conclusions. He does not say how the training was improper. His disagreement with the ultimate conclusions of the internal affairs investigation does not evince a lack of supervision.

Langley's failure to train and supervise claims fail.

D. *Texas Tort Claims Act.*

The County is liable for the negligence of its employees caused by the use of motor vehicles and tangible or real property.[25] Excluded from this waiver of immunity, however, are all claims "arising out of assault, battery, false imprisonment, or any other intentional tort."[26]

Langley's loosely pleaded assault claim is expressly barred by the Act. He otherwise asserts that the County was negligent because the "assault" caused injuries by "the use of tangible personal property [, s]pecifically, Deputy Rulong used his work boot to injure Mr. Langley."

---

[25] Texas Civ. Rem. & Prac. Code § 101.021; *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014).

[26] *Id.* § 101.057(2); *Pena v. City of Rio Grande City*, 879 F.3d 613, 625 (5th Cir. 2018); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658 (Tex. 2008).

Aside from the oxymoronic negligent assault, at no point does Langley allege that Rulong's foot was on his body – but rather his knee and hands. Unless the County now has its officers wearing boots on their hands and knees, this claim clearly fails – beyond Langley not defending it or otherwise offering any evidence to support it.

7. *Conclusion.*

Jace Langley will take nothing from Montgomery County, Montgomery County Sheriff's Office, and Richard Rulong.

Signed on March 21, 2022, at Houston, Texas.

Lynn N. Hughes
United States District Judge